FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2024 MAR -4 PM 3:42

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:23CR31 |
| vs. | PLEA AGREEMENT |
| ANDREW I. KINCAID, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Susan T. Lehr, Acting United States Attorney and Sean P. Lynch, Assistant United States Attorney, and defendant, ANDREW I. KINCAID, and Julie Hansen, counsel for defendant, as follows:

# I

## THE PLEA

A. CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Counts I and II of the Information. Count I charges a violation of Title 18, United States Code, Section 2113(a) and (d), bank robbery and assault committed during the commission of a bank robbery. Count II charges a violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2, brandishing a firearm, during and in relation to a bank robbery.

B. In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1. The United States will move to dismiss Counts I and II of the original Indictment in this matter at the time of sentencing.

2. The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for robbery and firearms crimes as disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes does not prevent any prosecuting authority from prosecuting the defendant for any other crime, or for any crime involving physical injury or death.

1

## II
## **NATURE OF THE OFFENSE**

A. <u>ELEMENTS EXPLAINED</u>.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

<u>Count I</u>:

*One*, the defendant attempted to take money from the person and presence of another, that is an employee of the First National Bank, while that money was in the care or custody of First National Bank.

*Two*, such attempted taking was by force and violence and intimidation;

*Three*, the defendant assaulted Victim 1 by use of a dangerous weapon while attempting to take money from the First National Bank; and

*Four*, the deposits of the First National Bank were then insured by the Federal Deposit Insurance Corporation.

<u>Count II</u>:

*One*, the defendant committed the crime of Bank Robbery described in Count I of the Information; and

*Two*, the defendant knowingly used, carried, and brandished a firearm, during and in relation to that crime.

*Three*, the guns carried in the bank robbery were firearms under federal law.

B. <u>ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS</u>.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

1. On January 26, 2023, two suspects armed with handguns robbed the First National Bank of Omaha located at 2625 S. 175th Street in Omaha, Nebraska, in the District of Nebraska. The bank was federally insured at the time and is presently federally insured.

2. Victim 2 was a pregnant teller working on the morning of the robbery. She told police officers who responded to the robbery that she observed one of the suspects strike Victim 1 in the head. Victim 1 was bleeding from his head on the security

2

video that investigators obtained of the robbery. The same suspect grabbed Victim 2 by her hair and dragged her across the lobby. This is the suspect whose face on video, when it was run through the state facial identification program used by the Department of Motor Vehicles, returned Taliaferro Thompson as a possible match for this suspect who assaulted two tellers. Thompson was one of many possible matches returned by the software, but Andrew Kincaid was not among those matched for the suspect who pistol whipped Victim 1. The second suspect also pushed another customer to the ground upon entering the bank.

3. Victim 1 was transported to the hospital for emergency care immediately following the bank robbery due to a large, bleeding wound on his head.

4. The suspect implicated by the facial recognition software as Taliaferro Thompson then forced Victim 1 at gunpoint to accompany him to the vault behind the counter. There, that suspect put well over $95,000 (approximately $350,000) in United States currency in a black trash bag while the second suspect said they needed to hurry and leave the bank. The stolen money included a red dye pack and bait bills.

5. Video from inside the bank revealed the two suspects took a white van to the robbery. The video had exceptionally clear definition, and the suspect implicated by the facial recognition software as possibly being Taliaferro Thompson (or one of many other possible matches) had approximately half of his face visible in the security video. That photo was used in a bulletin that the police department pushed out to the community, and a confidential informant immediately came forward and identified Taliaferro Thompson and Andrew Kincaid as the two suspects involved in the bank robbery.

6. The informant pointed police towards a residence on Nicholas Street in Omaha, Nebraska as a likely possible residence for Kincaid and Thompson. Surveillance confirmed that this was the case. Officers watched Taliaferro Thompson exit that residence with a female and get into a gray Jeep Cherokee. Officers stopped that vehicle and located approximately $76,000 in United States currency in the vehicle. Taliaferro Thompson had a handgun in his possession at the traffic stop, and a second handgun was located in the same vehicle. The robbery video

3

showed that both suspects who committed the bank robbery each carried what appeared to be handguns or firearms into the bank and pointed them at victims inside the bank.

7. Detectives encountered Andrew Kincaid inside the residence during the execution of a search warrant. Kincaid had apparent red dye on his face and head from attempting to dye his hair after the bank robbery.

8. A dumpster nearby included burnt money with red dye on it that would have been consistent with the stolen money from the bank robbery that contained a hidden red dye pack within it. The residential search also led to the recovery of a white belt and black mask that were consistent with items worn by a bank robber in the video, along with eyeglasses (the suspect that took Victim 1 to the vault after pistol whipping him wears eyeglasses in the bank video).

9. The white van used during the bank robbery according to security video that included the license plate number was tracked to a Baker's store nearby where the van was left running following the bank robbery. The van was reported stolen at the time of the robbery. A dark colored SUV was seen near the stolen van.

10. One of the witnesses also identified Thompson and Kincaid from stills from the bank robbery video. The witness identified the robber that the video shows pistol whipped Victim 1 and grabbed Victim 2 by her hair as Taliaferro Thompson. The suspect the witness identified as Andrew Kincaid is the suspect that shoved a customer victim to the ground at the outset of the robbery.

### III

### PENALTIES

A. COUNT I. Defendant understands that the crime to which defendant is pleading guilty carries the following penalties:

1. A maximum twenty-five (25) years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than three (5) years. Defendant understands that failure to comply with any of the conditions of supervised release

4

        may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.

    5. Possible ineligibility for certain Federal benefits.

B. COUNT II.

    1. A mandatory minimum of eighty-four months in prison up to life in prison to be served consecutively to Count I;

    2. A maximum $ 250,000 fine;

    3. A mandatory special assessment of $100 per count; and

    4. A term of supervised release of not more than five years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.

    5. Possible ineligibility for certain Federal benefits.

## IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

## V

## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree the defendant shall receive a sentence of no less than 154 months and no more than 270 months imprisonment. This negotiated agreement resolves all issues related to the case and is the appropriate disposition.

B. Restitution. Defendant agrees to the following regarding Restitution:

    a. The amount of restitution ordered by the Court shall include all relevant conduct,

including, but not limited to, all charged and uncharged criminal conduct alleged in the Indictment, and not limited to the count(s) of conviction.

    b. Defendant shall pay restitution in the amount of $350,000.

    c. Defendant also shall pay the Special Assessment of $100 per count of Conviction by submitting a satisfactory form of payment to the Clerk of the Court.

    d. Restitution and Assessment payments shall be made payable to the "U.S. District Court Clerk."

    e. The District Court Clerk will subsequently disburse Defendant's restitution payments to the following victim(s) for losses in the following amounts:

| Victim | Victim Loss Amount |
|---|---|
| First National Bank of Omaha | $350,000 |

    f. Court imposed monetary penalties are *due immediately* and subject to *immediate* enforcement by the United States. 18 U.S.C. § 3613.

    g. Any Court ordered schedule for restitution payments is merely a *minimum* payment obligation, and does not limit the methods by which the United States may immediately enforce the judgment in full, including but not limited to enrollment in the Treasury Offset Program (TOP) (*see* 26 U.S.C. § 6402(d); 31 U.S.C. §3720A; 31 U.S.C. § 3716) and garnishment of available funds, wages, or assets (*see* 18 U.S.C. §§3613, 3664(m)).

    h. If incarcerated, Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a payment schedule.

    i. Defendant will provide all of defendant's financial information to the United

States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam. Defendant will fully and truthfully disclose all assets and property in which Defendant has any interest, or over which Defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party.

j. At the request of the U.S. Attorney's Office (USAO), Financial Litigation Program (FLP), Defendant will promptly execute and return a fully completed and executed Financial Disclosure statement under oath, a Tax Information Authorization Form 8821, and a Request for Transcript of Tax Return Form 4506-T. Defendant also agrees to provide the USAO FLP copies of financial information that Defendant submitted to the U.S. Probation Office.

k. Defendant authorizes the USAO FLP to obtain Credit Reports concerning Defendant to enable the USAO to evaluate Defendant's ability to satisfy any financial obligations and monetary penalties imposed as part of the sentence, and will execute any Release for such information upon request.

l. Defendant understands that compliance with USAO requests for financial information will be taken into account when the United States makes a recommendation to the Court regarding Defendant's acceptance of responsibility at sentencing. Defendant's failure to timely and accurately complete and sign the financial statement and any update thereto, may, in addition to any other penalty or remedy, indicate a failure to accept responsibility.

m. Defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until Defendant has satisfied restitution in full.

n. Defendant certifies that Defendant has not transferred assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such

financial obligations. Defendant promises that Defendant will make no such transfers in the future.

   o. If the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which Defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of Defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, enforce the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, including enforcement of 100 percent of the value of any previously undisclosed asset. Defendant agrees not to contest enforcement against of such asset or property. If the United States opts to be relieved of its obligations under this plea agreement, Defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

C. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

  The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

  The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report and may be disclosed to the court for purposes of sentencing.

## VI
## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

  The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

      (a) As provided in Section I above, (if this is a conditional guilty plea); and

      (b) A claim of ineffective assistance of counsel.

      (c) A right to file a motion under Section 3582(c)(1)(A);

          1. the general right to file a compassionate release motion;

          2. the right to file a second or successive such motion; or

          3. the right to appeal the denial of a compassionate release.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

      (a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

      (b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII

## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any

obligation it otherwise has under this agreement and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs the agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## **MODIFICATION OF AGREEMENT MUST BE IN WRITING**

No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

## X

## **DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

UNITED STATES OF AMERICA
SUSAN T. LEHR
Acting United States Attorney

3/4/2024
Date

SEAN P. LYNCH
ASSISTANT U.S. ATTORNEY

1/31/2024
Date

ANDREW I. KINCAID
DEFENDANT

1/31/2024
Date

JULIE HANSEN
COUNSEL FOR DEFENDANT

11